UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **LAMEX FOODS, INC.,** § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-06-3733 |
| § | |
| **BLAKEMAN TRANSPORTATION,** § | |
| **INC., and MORNING EXPRESS, INC.,** § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Before the Court is the Motion to Dismiss or Transfer filed by Defendant Blakeman Transportation, Inc.  After considering the parties' filings and the applicable law, the Court finds that the motion, Docket No. 9, should be and hereby is **DENIED**.

### I.  BACKGROUND

This case arises from the loss of a shipment of frozen pork loin ribs, which Plaintiff allegedly tendered to Defendants for intra-state carriage.

Plaintiff Lamex Foods is a Minnesota-based exporter and domestic supplier of meat, poultry, fruit, and vegetables.  Defendant Blakeman Transportation is a Texas freight brokerage and logistics company, and Defendant Morning Express is an independent contract motor carrier also incorporated in Texas.[1]  According to Plaintiff, Lamex arranged in February 2005 for Defendants to transport 909 cases of frozen pork ribs over the road from Houston, Texas to Grand Prairie, Texas.  Blakeman  was to act as the transportation broker, and Morning Express would carry the cargo.

---

[1] Morning Express does not join Blakeman's motion to dismiss; indeed, it appears that service has not yet been effected upon Morning Express.

1

Plaintiff contends that its shipper delivered the ribs in good condition to Defendants on or about February 11, 2005. Neither Blakeman nor Morning Express provided a waybill, bill of lading, receipt, or any other shipping memorandum; rather, the shipment was to be performed under an oral contract.[2] The ribs never reached their destination, however. According to Plaintiff, the trailer carrying the cargo was discovered empty in a Houston restaurant parking lot on March 4, 2005, and Defendants have neither located the ribs nor explained their disappearance.

In the original Complaint, Plaintiff asserts claims for, *inter alia*, breach of contract and negligence. Plaintiff seeks to recover the actual value of the cargo, which it reports to be $129,587.04, as well as fees, costs, and interest. Defendant Blakeman Transportation now moves to dismiss or transfer the case, arguing that venue is improper in the Southern District of Texas.

## II.   ANALYSIS

### A. Motion to Dismiss

Blakeman first moves to dismiss the case for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), asserting two grounds for dismissal: first, that venue has been predetermined by a forum selection clause, and second, that venue is improper in the Southern District of Texas under 28 U.S.C. § 1391(a). District courts in this circuit are divided over which party bears the burden of proof with regard to venue after a Rule 12(b)(3) motion has been made.[3] The issue need not be addressed in

---

[2] Plaintiff's response to the motion to dismiss states that Lamex and Blakeman were not new to one another in February 2005; by then, Blakeman had handled more than thirty shipments for Lamex. Pl.'s Resp. 3. Neither party indicates whether these previous shipments were also arranged under oral contracts, without bills of lading or other shipping receipts.

[3] *Compare Texas Marine & Brokerage, Inc. v. Euton*, 120 F. Supp. 2d 611 (E.D. Tex. 2000), *Sanders v. Seal Fleet, Inc.*, 998 F. Supp. 729 (E.D. Tex. 1998), and *Bounty-Full Entm't, Inc. v. Forever Blue Entm't Group, Inc.*, 923 F. Supp. 950 (S.D. Tex. 1996) (all holding that a defendant moving to dismiss under Rule

this case, however, because it is clear under either analysis that the motion to dismiss should be denied.

### 1. Forum selection clause

Blakeman first argues that a forum selection clause in its standard Terms and Conditions governs the transaction at issue. Blakeman attaches the purported set of "Terms and Conditions of Service" to its motion to dismiss, under which "[a]ny legal proceeding instituted against BTI relating to the services provided by BTI to the Customer must be instituted in Tarrant County, Texas." Def.'s Mot. to Dismiss, Ex. B. Plaintiff counters that it never received, nor was it notified orally or in writing, of the referenced terms. Indeed, Blakeman does not claim that it ever actually provided Lamex with the Terms and Conditions, that Lamex ever signed a document incorporating them, or even that Lamex orally agreed to the Terms and Conditions. Rather, Blakeman states simply that "Blakeman's services to Lamex were rendered subject to Blakeman's Terms and Conditions of Service. All services rendered in Blakeman's regular course of business are subject to Blakeman's Terms and Conditions of Service." Def.'s Mot. to Dismiss, Ex. A at 1 (Aff. of Steve Gold).

The Court agrees that forum selection clauses are presumed to be valid, and should generally be enforced. However, Blakeman has not demonstrated or even argued that Lamex bound itself contractually to any agreement incorporating a forum selection clause. It is insufficient to state, as Blakeman does, that the Terms and Conditions applied simply because Lamex was a customer, regardless of whether those terms were

---

12(b)(3) bears the burden of showing improper venue), *with Norsworthy v. Mystik Transp., Inc.*, 430 F. Supp. 2d 631 (E.D. Tex. 2006), *Langton v. Cbeyond Commc'n, L.L.C.*, 282 F. Supp. 2d 504 (E.D. Tex. 2003) (holding that the plaintiff bears the burden once a motion dismiss for improper venue has been made).

appended to any agreement between Lamex and Blakeman that was freely negotiated and binding on both parties. Where forum selection clauses "*have been obtained through 'freely negotiated' agreements* and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) (internal citation omitted) (emphasis added). Because Blakeman has not shown that Lamex agreed to and was contractually bound by the forum selection clause, the Court declines to enforce that clause by dismissing Lamex's claims.

### 2.  28 U.S.C. § 1391(a)

Defendant Blakeman Transportation next argues that the case should be dismissed because venue in the Southern District of Texas is improper under 28 U.S.C. § 1391(a). Under Section 1391(a), a diversity action may be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."

In the Court's view, venue is proper in the Southern District under Section 1391(a)(2). A substantial part of the events giving rise to Lamex's claims occurred in this district – namely, Lamex's alleged delivery of the cargo to Defendants, and, most likely, the loss of that cargo. Blakeman insists that the case actually revolves around the failure of the cargo to appear in Grand Prairie, which is in the Northern District of Texas. The Court is unpersuaded by Defendant's characterization of events. Therefore,

Blakeman's motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1391 is denied.

### B.  Motion to Transfer

In the alternative, Blakeman asks the Court to transfer the case to the Northern District of the Texas under either 28 U.S.C. § 1406(a) or § 1404(a).  Under Section 1406(a), a district court shall dismiss or transfer a case "laying venue in the wrong division or district."  Under Section 1404(a), a correctly filed case may nevertheless be transferred to another district "[f]or the convenience of parties and witnesses, in the interest of justice."  For the reasons discussed above, Plaintiff has not filed in the wrong district, either under 28 U.S.C. § 1391(a) or in contravention of a forum selection clause. Therefore, Section 1406(a) does not apply.  The Court must now decide whether "the interest of justice" requires the case to be transferred.

The parties agree that Blakeman, as the movant under Section 1404(a), bears the burden of establishing the propriety of the transfer and the superiority of the transferee district.  *E.g.*, *Zamora-Garcia v. Moore*, No. M-05-331, 2006 WL 331034, at *3 (S.D. Tex. Nov. 16, 2006) (citing cases).  Further, in weighing alternate venues, the plaintiff's choice of venue normally should not be disturbed, unless clearly outweighed by other factors.  *E.g.*, *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672 (5th Cir. 2003); *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989); *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. Unit B July 1981).  The Supreme Court set forth private and public factors to be weighed in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), and reaffirmed them in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981).  The private concerns include 1) the relative ease of access to sources of proof; 2) the availability of

5

compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  The public concerns include: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.  *Id.* at 241 n.6.

### 1.  Private factors

The private *Gulf Oil* factors relate generally to the practical aspects of litigation – cost, location of evidence and witnesses, etc.  Blakeman asserts that because both Defendants are headquartered in the Northern District, all of the relevant documents and witnesses are located there, including corporate officers and employees with knowledge of the disputed events.  Further, the alleged theft of the ribs was reported to and investigated by the Arlington Police Department, also in the Northern District.  Because Lamex is a Minnesota corporation, Blakeman argues, it will not be more burdensome for Lamex to litigate in the Northern District than in the Southern District.  Lamex counters that Blakeman has not demonstrated that all witnesses are, in fact, in the Northern District, or that the relevant documents are so voluminous as to render trial in the Southern District unreasonably costly.

The Court acknowledges that in the event the case goes to trial or an evidentiary hearing must be conducted, litigation in the Southern District would be costlier and less convenient for corporate witnesses than the Northern District.  In that respect, the private factors tilt in favor of transfer.  However, given that the delivery of the cargo to

Defendants occurred in the Southern District, as well as the discovery of the empty carrier and (most likely) the alleged theft, Blakeman has not persuaded the Court that *all* relevant witnesses are in the Northern District. As to the problem of transporting documents, the parties appear to agree that no written contract or shipping memorandum governed this particular shipment, but rather that it occurred pursuant to an oral understanding. While relevant documents may exist relating to prior business dealings between the parties, this case generally does not seem to revolve around large amounts of written material. Finally, the reality of modern litigation is that because of the telecommunications technology at our disposal, much can be accomplished electronically or over the phone, including interactions with the Court. Non-resident parties and counsel are by no means uncommon in the Southern District. For these reasons, the private factors do not clearly outweigh Plaintiff's choice of forum.

### 2. Public factors

The public factors set forth in *Gulf Oil* and *Piper* are, again: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Piper*, 454 U.S. at 241 n.6. Blakeman does not argue that the first, third, or fourth factors favor the Northern District, nor could it credibly do so. The Court has no reason to suspect that the Southern District is more congested than the Northern; that either forum has a superior ability to interpret the state law applicable in a diversity case; or that foreign law will play a role in this case. With regard to the second factor, Blakeman asserts that the Northern District has a greater interest in the litigation because

both Defendants are residents, and that jurors in the Southern District should not be subjected to a case involving non-resident parties.

The Court agrees that the Northern District has an interest in a case involving these Defendants. However, given that the unexplained, troubling event – the loss of a sizable cargo shipment – most likely occurred in Harris County, the Southern District has some interest as well. Further, while Defendants are not residents of the Southern District, they appear to do business here. The Court finds that the public factors are evenly weighted between the parties, and do not tilt in favor of transfer. Therefore, the Court must respect Plaintiff's choice of venue, and deny discretionary transfer to the Northern District.

### III.   CONCLUSION

Defendants' Motion to Dismiss or Transfer is **DENIED.**

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 15th day of May, 2007.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**